Patrick v. MA Port Authority          CV-00-554-JD  04/24/01  P
                   UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Dorothy Patrick

        v.                                  Civil No. 00-554-JD
                                            Opinion No. 2001 DNH 079
Massachusetts Port
Authority, et al.


                                O R D E R


        The plaintiff, Dorothy Patrick, fell while walking through a

"restricted area" of Logan Airport with a tour group when the

group was transferring between planes.  Patrick alleges

negligence claims against the Massachusetts Port Authority

("Massport"), Collette Tours, Inc., Northwest Airlines, Inc., and

AMR Corporation.  The plaintiff alleges subject matter

jurisdiction based on diversity of citizenship pursuant to 28

U.S.C.A. § 1332.  Massport, Northwest Airlines, and AMR have

moved to dismiss, for lack of both subject matter and personal

jurisdiction.  Collette moves to dismiss or for summary judgment

as to the claims brought against it.  The plaintiff objects.  The

motions are resolved as follows.


A.  Motions to Dismiss for Lack of Subject Matter Jurisdiction

        AMR Corporation, Northwest Airlines, and Business Express

filed motions to dismiss for lack of subject matter jurisdiction.

In the original complaint, filed on December 1, 2000, Patrick alleged subject matter jurisdiction based on diversity of citizenship, 28 U.S.C.A. § 1332. In support of jurisdiction, however, Patrick alleged that defendant Business Express had its principal place of business in Dover, New Hampshire, and that she is a New Hampshire resident. Therefore, Patrick's jurisdictional allegations did not allege complete diversity.

Business Express stated in its corporate disclosure statement filed on January 16, 2001:

> At the time this lawsuit was brought, Business Express Airlines, Inc. existed as a separate entity. Subsequent to this suit being filed, Business Express Airlines, Inc. was merged into American Eagle Airlines, Inc. effective December 31, 2000, and ceased to separately exist. American Eagle Airlines, Inc. is a subsidiary of AMR Eagle Holding Corporation which, in turn, is a subsidiary of AMR Corp. AMR Corp. is the only related corporation that issues stock to the public.

Doc. no. 19. In response, Patrick filed a motion to amend her complaint, stating that the information about Business Express in the original complaint was not correct and seeking to amend to drop Business Express and to add AMR Corporation in its place. The motion was granted and the amended complaint was filed on February 15, 2001.[1] Business Express is no longer a party in the

---

[1]In her motion, Patrick asserted that she was amending the complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a). However, since Northwest had already filed its

amended complaint, and in its place, Patrick names AMR

Corporation, alleging:

> The defendant, AMR Corp. is a successor to Business
> Express Airlines, Inc., and is a foreign corporation,
> having a principal place of business at P.O. Box
> 619616, Mail Drop 5494, D.F.W. Airport, Dallas/Fort
> Worth, Texas 75261.  Prior to being acquired by AMR
> Corp., Business Express Airlines, Inc. was a Delaware
> corporation having a principal place of business at
> 4333 Amon Cutter, Forth Worth, TX 756155 [sic].

Am. Compl. ¶ 6.

Northwest and Business Express both challenge the

jurisdictional allegations in the original complaint, which has

now been superseded by the amended complaint, in which Business

Express is no longer a party.  See Boelens v. Redman Homes, Inc.,

759 F.2d 504, 508 (5th Cir. 1985); Int'l Controls Corp. v. Vesco,

556 F.2d 665, 668 (2d Cir. 1977).  AMR Corporation, which was

added as a party in the amended complaint, challenges subject

matter jurisdiction on the ground that complete diversity did not

exist when the action commenced and that the jurisdictional

defect cannot be cured by subsequent events.

The existence of federal subject matter jurisdiction based

on complete diversity is ordinarily determined at the time the

complaint is filed.  See Freeport-McMoRan, Inc. v. K.N. Energy,

---

motion to dismiss, Patrick properly sought leave to amend, which
was granted.

Inc., 498 U.S. 426, 428 (1991); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989). If, as Patrick alleges, her original jurisdictional allegations were erroneous because Business Express then had its principal place of business in Texas, not New Hampshire, complete diversity existed at that time and the jurisdictional statement may be corrected by amendment.[2] See 28 U.S.C.A. § 1653; Newman-Green, 490 U.S. at 826. On the other hand, if complete diversity was lacking when the action commenced, jurisdiction did not exist and cannot be corrected by subsequent events or amendment. See id. at 831-32.

Nevertheless, a jurisdictional defect due to a lack of diversity may be cured by dismissing a nondiverse dispensable party from the action pursuant to Federal Rule of Civil Procedure 21. See id. at 832-34; see also Casas Office Mach., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 675 (1st Cir. 1994). Since Business Express no longer exists, and did not exist when the amended complaint was filed, it is a dispensable party. See Fed. R. Civ. P. 19(b). Therefore, the court is satisfied that subject matter jurisdiction based on diversity of citizenship exists as alleged in the amended complaint.

_____

[2] AMR Corporation contends that Business Express's principal place of business in December of 2000 was Dover, New Hampshire.

B.    <u>Massport - - Motion to Dismiss for Lack of Personal</u>

  <u>Jurisdiction</u>

Massport moves to dismiss the claims against it for lack of personal jurisdiction.  "It is well established in diversity cases that the district court's personal jurisdiction over a nonresident defendant is governed by the forum's long-arm statute."  <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1387 (1st Cir. 1995) (internal quotation omitted).  Under New Hampshire law, Revised Statutes Annotated ("RSA") 293-A:15.10 is the applicable statutory authority for personal jurisdiction.  RSA 293-A:15.10 authorizes jurisdiction to the extent permitted by the due process clause of the Constitution.  <u>See</u> <u>Sawtelle</u>, 70 F.3d at 1388.  Due process precludes a court from exercising personal jurisdiction unless "the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there."  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

The plaintiff bears the burden of demonstrating that jurisdiction exists.  <u>See</u> <u>Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n</u>, 142 F.3d 26, 34 (1st Cir. 1999).  When the issue is presented without an evidentiary hearing, the analysis

5

proceeds under a prima facie standard.  See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 147 (1st Cir. 1995). Even under a prima facie standard, however, the plaintiff must proffer sufficient facts in opposition to the defendant's motion, supported by evidentiary materials, to demonstrate the existence of jurisdiction.  See Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001).  Personal jurisdiction may be based on a theory of specific or general jurisdiction, depending on the nature of the defendant's contacts with the forum.  See Pritzker v. Yari, 42 F.3d 53, 59 (1st Cir. 1994).

In this case, Patrick asserts general, rather than specific, jurisdiction.  The degree of contact with the forum necessary to support general personal jurisdiction is high.  See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984); see also Donatelli v. Nat'l Hockey League, 893 F.2d 459, 463 (1st Cir. 1990) ("'[T]he standard for general jurisdiction is considerably more stringent' than the standard for specific jurisdiction." quoting Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984)).  To support general jurisdiction, the plaintiff must show that the defendant had continuous and systematic contacts with or linkage to the forum state.  See Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

6

Massport has its principal place of business in East Boston, Massachusetts, and owns and operates facilities in Massachusetts, including Logan Airport.  Massport does not maintain any place of business or facilities or own property in New Hampshire.  Massport has not registered to do business in New Hampshire, does not transact business in New Hampshire, and does not have employees working in New Hampshire.

Patrick, nevertheless, contends that Massport has continuous and systematic contacts with New Hampshire because it promotes Logan Airport as "the gateway to New England," because a significant number of New Hampshire residents use Logan, and because Massport has encouraged increased use of the Manchester Airport in New Hampshire as part of a regionalized approach to New England's transportation needs.[3]

In Helicopteros, the Supreme Court held that a visit to the forum state by the chief executive officer of the defendant company to negotiate a business contract, purchase of helicopters

_____

[3]Although the plaintiff's memorandum in support of her objection to Massport's motion states that Massport "is directly involved in joint ventures to promote the Manchester Airport here in New Hampshire," such conclusory statements unsupported by evidentiary materials are insufficient to establish jurisdiction. See Barrett, 239 F.3d at 27 ("In order to defeat a motion to dismiss for want of in personam jurisdiction, a plaintiff must do more than simply surmise the existence of a favorable factual scenario; [she] must verify the facts alleged through materials of evidentiary quality.").

by the defendant from a company in the forum, training of the defendant's pilots in the forum, transportation of the helicopters from the forum by the defendant's pilots, visits of the defendant's plant management personnel to the forum for consultation, and payments to the defendant company made from the forum were not sufficient contacts to support general jurisdiction.  See 466 U.S. at 416-19.  The First Circuit has not found that business contact with a forum state, primarily based on advertising, is sufficient to justify the exercise of general personal jurisdiction.  See Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) (discussing Donatelli, 893 F.2d at 471 and Glater, 744 F.2d at 214-15, 217); see also Sandstrom v. Chemlawn, 904 F.2d 83, 88 (1st Cir. 1990).

Patrick cites no cases in which a court found general personal jurisdiction based on forum contacts that are similar or analogous to Massport's tangential contacts with New Hampshire. Based on the record and arguments presented in opposition to Massport's motion to dismiss, Patrick has failed to carry her burden of showing that due process would permit the exercise of general personal jurisdiction over Massport.  Massport's motion to dismiss for lack of personal jurisdiction is granted.

C.    AMR Corporation - - Motion to Dismiss

AMR also moves to dismiss the claims against it based on a lack of personal jurisdiction.  AMR contends that it is a holding company, without employees, located in Texas, and that it does not transact business in New Hampshire.  AMR also explains its relationship to Business Express as follows.  Business Express was merged into American Eagle Airlines, Inc. in December of 2000.  American Eagle Airlines, Inc. is a subsidiary of AMR Eagle Holding Corporation, which is a subsidiary of AMR Corporation.

The plaintiff argues that AMR is subject to personal jurisdiction based on its status as the successor to Business Express.  "In order to make a prima facie showing that this court has personal jurisdiction over defendant [AMR] under the doctrine of successor liability, plaintiff must demonstrate (1) that the court has personal jurisdiction over [Business Express] and (2) that [AMR] is liable as a successor to [Business Express] under New Hampshire law."  McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 57 (D.N.H. 1994); see also Mesiti v. Microdot, Inc., 739 F. Supp. 57, 60-61 (1990).  New Hampshire law has been interpreted to permit successor liability under limited circumstances where:  (1) the buyer expressly or impliedly agrees to assume the seller's liabilities; (2) the asset purchase

9

qualifies as a de facto merger; (3) the buyer is a "mere continuation" of the seller; (4) the buyer is not a purchaser in good faith; or (5) the transaction is fraudulent. See Cyr v. B. Offen & Co., Inc., 501 F.2d 1145, 1152 (1st Cir. 1974) (interpreting New Hampshire law).

Patrick offers no evidence to show that AMR is Business Express's successor under any of the applicable theories. In contrast, AMR submits affidavits of the corporate secretary of AMR and the vice president and general counsel of American Eagle Airlines, Inc. which show that American Eagle, not AMR, purchased the stock of Business Express. AMR's affidavits also establish that the only link between the AMR and Business Express is that AMR is the parent corporation of the parent corporation of American Eagle, which purchased the stock of Business Express. Based on the arguments and record presented, Patrick has not shown that personal jurisdiction exists with respect to AMR as the successor to Business Express or on any other basis.[4] AMR's motion to dismiss for lack of personal jurisdiction is granted.

---

[4]Patrick contends that she should be allowed to further amend her complaint if she has again named the wrong party. Since a motion to amend must be filed separately with an appropriate caption, her argument is not in proper form and is not considered as a motion to amend her complaint. See LR 7.1(a) & 15.1.

10

D.    Collette Tours, Inc. - - Motion to Dismiss or for Summary
      Judgment

Collette Travel Service, Inc., which is named in the complaint as Collette Tours, Inc., moves to dismiss Patrick's claims or in the alternative for summary judgment, contending that it is not liable for Patrick's fall and that its disclaimer bars Patrick's claims.  Since the motion is captioned as one for summary judgment and includes supporting extrinsic materials and since Patrick responded with her own affidavit, the motion is treated as one for summary judgment.  See, e.g., Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999).  A party opposing a

properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000).

Patrick states in her affidavit that she contacted Vermont Transit Tours in Burlington, Vermont, about a tour to Nashville, Tennessee, and that the tour was then arranged by Collette. Apparently, she paid Vermont Transit for the trip, and Vermont Transit then paid Collette for the tour group as a whole.  After the Nashville tour, when the group was traveling through Logan Airport on their way back to Burlington, Patrick contends that the group was led by a Massport or airline employee through a restricted area in the airport where she lost her footing and fell.  Patrick further states that she was put on the plane to Burlington, despite her injuries, without appropriate medical care.  Patrick also states that Collette arranged for and provided a tour guide named Herbert Fisher, who accompanied the group throughout the tour and was with the group when she fell and when she was put on the plane back to Burlington without medical care.  She charges that Collette's negligence led to her fall and lack of medical care.

Collette states, supported by the affidavit of John Galvin,

the chief financial officer of Collette, that Collette arranged Patrick's tour to Nashville and provided a tour guide who accompanied the group while they were in Nashville. Galvin states that no Collette tour guide accompanied the group during their travel to and from Nashville. Galvin further states that Herbert Fisher was not and is not an employee of Collette, but instead, that he was a paying member of the tour group. Galvin notes that a letter to Collette tours from Vermont Transit, enclosing the total payment for the group tour, was signed by Herbert Fisher as "Manager of Tours" for Vermont Transit.

Patrick alleges tort claims premised on Collette's negligence, specifically its failure to provide safe transportation, failure to warn of danger in the airport, and failure to provide medical care.[5] In any negligence action, "the plaintiff must demonstrate the existence of a duty flowing from the defendant to the plaintiff and that the defendant's breach of that duty caused the injury for which the plaintiff seeks to recover."[6] <u>Hickingbotham v. Burke</u>, 140 N.H. 28, 34 (1995). Duty

---

[5]Although Patrick alleged a claim that Collette was negligent in failing to provide safe transportation, she has not pursued that claim in opposition to Collette's motion, and it is deemed to be waived.

[6]Collette raises a question of whether New Hampshire or Massachusetts law would apply in this case, but posits that the laws are not in conflict. Patrick has not addressed the issue.

13

depends on the foreseeability of harm.  See Manchenton v. Auto Leasing Corp., 135 N.H. 298, 304 (1992).  A duty exists to use reasonable care, under all of the circumstances, not to cause reasonably foreseeable harm.  See id.; accord Iannelli v. Burger King Corp., 761 A.2d 417, 420 (N.H. 2000); Kellner v. Lowney, 761 A.2d 421, 423-24 (N.H. 2000).

No duty exists to provide a warning about third parties unless the defendant has control over the third party or a special relationship that gives the plaintiff the right to such a warning.  See Powell v. Catholic Med. Ctr., 749 A.2d 301, 305 (N.H. 2000).  Similarly, defendants generally are not liable for the actions of independent contractors or third parties.  See Arthur v. Holy Rosary Credit Union, 139 N.H. 463, 465 (1995).

---

Generally, a federal court sitting in diversity jurisdiction applies the substantive law of the forum state and federal procedural rules.  See 28 U.S.C.A. § 2071; Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  As a result, the court applies the choice-of-law principles of the forum state to determine which state's substantive law to apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether New Hampshire law actually conflicts with the laws of the other interested states.  See Keeton v. Hustler Magazine, Inc., 131 N.H. 6, 13 (1988).  Since it appears that no actual conflict exists as to the law of the interested states, no further analysis is required, and New Hampshire substantive law applies.

14

Under vicarious liability theories, however, an employer may be liable for the negligent acts of its employee or agent.  See Boissonnault v. Bristol Federated Church, 138 N.H. 476, 478 (1994).  A defendant also may assume or undertake duties that would not otherwise be owed to the plaintiff.  See Trull v. Town of Conway, 140 N.H. 579, 582 (1995).

Courts in other jurisdictions have not held tour operators liable for the negligent conduct of third parties or independent contractors such as airlines, airports, or other service providers.  See, e.g., Sachs v. TWA Getaway Vacations, Inc., 125 F. Supp. 2d 1368, 1373 & n.31 (S.D. Fla. 2000); Viches v. MLT, Inc., 124 F. Supp. 2d 1092, 1095 (E.D. Mich. 2000); Dubret v. Holland Am. Line Westours, Inc., 25 F. Supp. 2d 1151, 1152-53 (W.D. Wash. 1998); Passero v. DHC Hotels & Resorts, Inc., 981 F. Supp. 742, 745-46 (D. Conn. 1996); Davies v. Gen. Tours, Inc., 1999 WL 712917, at *2 (Conn. Super. Ct. Aug. 31, 1999).  Tour operators do not have a duty to avoid or warn of hazards of which they have no knowledge or that are not within their control. See, e.g., Dow v. Abercrombie & Kent Int'l, Inc., 2000 WL 688949, at *8 (N.D. Ill. May 24, 2000); Cutchin v. Habitat Curacao-Maduro Dive Fanta-Seas, Inc., 1999 WL 33232277, at *6 (S.D. Fla. Feb. 8, 1999); Carley v. Theater Dev. Fund, 22 F. Supp. 2d 224, 227-29 (S.D.N.Y. 1998); Sova v. Apple Vacations, 984 F. Supp. 1136,

1140-41 (S.D. Ohio 1997). Tour operators may be liable for their own negligence, however, such as in the negligent selection of independent contractors. See Sachs, 125 F. Supp. 2d at 1373; Lyall v. Airtran Airlines, Inc., 109 F. Supp. 2d 365, 370-71 (E.D. Pa. 2000). Tour operators may also be liable for additional duties undertaken or assumed and negligently performed and for their employees' negligence in performing such duties, such as a tour guide who negligently directs the tour group into a hazardous situation. See, e.g., Cohen v. Heritage Motor Tours, Inc., 618 N.Y.S.2d 387, 389 (N.Y. App. Div. 1994); Kaufman v. A-1 Bus Lines, Inc., 416 So. 2d 863, 864 (Fla. Dist. Ct. App. 1982).

In opposition to Collette's motion, Patrick asserts that Collette is liable for Fisher's failure to warn of the dangerous condition of the walk in the restricted area of the airport and for his failure to give her appropriate medical care after the fall. The record establishes, however, that Fisher was not an employee or agent of Collette. Patrick's unsupported affidavit statement that Fisher was a Collette tour guide is convincingly refuted by Galvin's affidavit and the supporting evidence that Fisher worked for Vermont Transit.

In addition, the plaintiff has not shown that Collette knew of the condition of the restricted area, knew that the group would be led that way, or assumed a duty to warn of hazardous

16

conditions in the airport. Patrick also has not shown that Collette had or assumed a duty to provide medical care under the circumstances of her fall. Therefore, on the record presented, as Patrick has not shown that Collette had duties to warn her or protect her from harm or provide medical care, Collette is entitled to summary judgment.[7]

Patrick argues that Collette's motion is premature because there has been no opportunity to conduct discovery. But see Fed. R. Civ. P. 56(b) ("A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."). Assuming that Patrick intended to seek relief pursuant to Federal Rule of Civil Procedure 56(f), she has not made a sufficient showing that discovery would aid her in maintaining her claims to invoke the rule's protection. See, e.g., FDIC v. Kooyomjian, 220 F.3d 10, 15 (1st Cir. 2000); Resolution Trust Corp. v. North Bridge Assocs., 22 F.3d 1198, 1203 (1st Cir. 1994).

Further, based only on the allegations in the complaint in the context of Collette's alternative motion to dismiss, Patrick

---

[7]The court does not reach the issue of the effect of the disclaimer on Patrick's claims.

has failed to state a claim. Patrick alleged that she, with the tour group, was led through a restricted area in the airport by an employee of one of the airline defendants or Massport, not by a Collette tour guide. Although she alleges that the group was accompanied by and was under the control of a tour guide from Collette, she provides no allegations to support any theory that Collette owed Patrick a duty to warn of dangers in the airport or to provide medical care after the fall. Therefore, absent factual allegations that Collette had duties to avoid or warn of danger and to provide medical care, Patrick has not alleged claims that Collette is liable for Patrick's fall or the lack of medical care afterward.

## Conclusion

For the foregoing reasons, the motions to dismiss for lack of subject matter jurisdiction filed by Northwest Airlines, Business Express, and AMR Corporation (documents no. 9, 30 and 43) are denied. The motion to dismiss for lack of personal jurisdiction filed by Massport (document no. 35) is granted. The motion to dismiss for lack of personal jurisdiction filed by AMR Corporation (document no. 43) is granted. Collette Travel Service, Inc.'s motion for summary judgment (document no. 13) is granted.

18

Business Express, having not been included as a party in the amended complaint, is no longer a party in this litigation. Northwest Airlines is the only remaining defendant.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

April 24, 2001

cc:   Thomas A. Rappa Jr., Esquire
      John C. LaLiberte, Esquire
      Margaret H. Nelson, Esquire
      Rodney E. Gould, Esquire
      Russell X. Pollock, Esquire
      Garry R. Lane, Esquire